FILED

**In the United States District Court
For the Eastern District of Virginia
Alexandria Division**

2016 AUG -4 P 12:16

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

Tanyon Watson
9515 Shepherd Hills Drive
Lorton Virginia
571 338 3506

v.                                            Civil Action No. 1:16 CV 1002

Virginia Department for Aging & Vocational Rehabilitation Services

Carrie Gilbert
Davian Morrell
Doug James
Terry Bertsch
Julie Triplett

**COMPLAINT**

This case is appropriate for Federal Court based on following statutes:

Section 504 of the Rehabilitation Act of 1973; the American with Disability Act Amendment of 2008; Civil Rights of Students with Hidden Disabilities under Section 504 of Rehabilitation Act of 1973; Federal Register 34 CFR Part 361.52; Federal Register 34 CFR Part 361.50; Higher Education's Obligations Under Section 504; Title II of the ADA.;

Tanyon Watson (TW) has a documented learning disability-dyslexia, i.e. ICD 9 315.01. 315.32 and attention-deficit disorder/hyperactivity (ADHD)[Section 504, Rehabilitation Act 1973. These difficulties occur in the presence of average intelligence and exceptional interpersonal skills.

The Virginia Department of Aging & Vocational Rehabilitation Services (DARS) violated TW 504 rights when his assigned counselor, Davian Morrell (DM), verbally denied TW funded services on June 25, 2014 to be able to participate in a federally supported personal training program, ie. the National Personal Training Institute (NPTI) in the presence of a VA disAbility Law Center advocate, Julie Triplett, and his mother E. Lea Watson. TW did not receive the written denial from DM until August 4, 2014. DM stated to TW with disdain that because "you read at a six grade reading level, you wouldn't be able to appreciate the program" (NPTI).[pg 72/197] [ Reh Act Sec 794] This denial by DM came several months after TW had been asked to identify and research an appropriate personal training program. On November 18, 2014 during the DARS fair hearing Doug James, DARS Regional Director(DJ), further stated that regardless of whether TW passed a personal training certification exam, TW would not be able to handle "the essential functions of the job" [pg 187]– permanently dismissing any support from DARS for TW to pursue

personal training as an employment goal. The DARS appointed fair hearing officer, Mrs. Kane, Esq. never addressed the the focal points of TW's initial fair hearing grievance. Her summary decision categorically dismissed personal training as a continued employment goal for TW unless overturned in Federal jurisdiction.[ pg.61]

The decision to deny TW services was arbitrary and demonstrates intentional discrimination in light of the following occurrences:
1) DARS failed to acknowledge or use documentation/recommendations provided by TW's neuropsychologists or the learning needs assessment. More seriously, many examples in TW permanent case file demonstrate evidence that the content had been either unlawfully altered or intentionally manipulated (ex Case Note 11/23/2010)[ Dolman learning assessment -original template was altered without Mr. Dolman authorization [ pg.51-59 ]; No authorization was provided by TW for a change of counselor ; many documents in his permanent case record had the name of counselor name that TW had no current or previous relationship with [ex. pg50].
2) DJ admitted that TW's vocational assessment was "missing" from his permanent DARS record- this 2007 document identified personal/physical training careers as a major interest and strength. DARS staff admitted during the fair hearing that some permanent files and documents have been either missing or ignored ( all records prior to 2009). This is a violation cited in DARS policy manual. TW had a copy of his vocational evaluation and [pg. 2-33; 299-304]
3) DM denied services because of TW disability, disregarding any benefits or accommodations that the NPTI program might offer [pg71)and his lack of regard for TW desire to achieve a career of his choosing [34 CFR Part 361.52]. DM read TW neuropsychological report and did not make or negotiate any recommendations for TW participating in the NPTI program that were identified by Dr. Mapou, neuropsychologist.[pg.67]
4) The personal training goal was established in 2007 when DARS financially supported fitness/personal training courses for TW at Northern Virginia Community College (NOVA). It is DARS policy that any funding or services for its clients must be connected to an employment goal; yet there is no historical record of DARS ever supporting of personal training in TW permanent file. At the fair hearing DARS staff insisted that personal training was only a " personal interest" of TW and never an employment goal until established in 2013 ( see exhibits). Reimbursement by DARS in 2007 for TW to participate in fitness/personal training courses is consistent with DARS policy.
5) Further attempts after 2007 by TW to pursue personal training as an employment goal were either been passively ignored, redirected or TW has even been bullied by DARS counselors/advocates to change his goal or venue and submit to more testing or signing documents that he did not fully understand; Ex The recommendations in the Dolman learning assessment were ignored by DARS counselor, Ms. Gilbert and were never shared with the DARS contracted study skills tutor, Mr. Paul Tibbetts, when TW was preparing for the AFFA retest.[pg 59]
6) When TW was specifically asked to research personal training programs that would be more appropriate for his learning style and TW found NPTI, it was immediately dismiss and never explored by DM[pg 185/186].

7) Since 2007 when TW identified personal training as his employment goal, DARS has funded two fitness training courses and a study skills tutor for retesting only for the Aerobic and Fitness Association of America (AFAA) certification program (TW personally funded.)
8) DARS failed to negotiate any services or reasonable accommodation for the AFFA testing[pg 57].

9) There are a number of examples of DM condensing attitude of TW disability (pg. 226) and DM's lack of understanding of what TW is entitled to under the 504 law. This lack of understanding is also evidenced by DARS case manager Terry Bertsch [ pg.50]

The denial was made without regard for the program benefits of NPTI and how it could TW to meet his employment goal. Tim Henriques, NPTI Director, affirmed that NPTI is a comprehensive diploma program that is widely recognized by most gyms and fitness centers, allowing individuals immediate employment options without the need for certification testing. NPTI admits having worked with mild to severely disabled students, including DARS clients.[pg 67] An established program for more than 20 years, NPTI was never presented by DARS as an option for TW.

These actions or the lack thereof demonstrate that TW's denial was arbitrary and intentionally discriminatory.

TW exhausted all levels of the administrative grievance process prior to filing for Federal investigation and intervention, including and administrative appeal review by the DARS State Commissioner Office in Richmond, Virginia and Federal State Department of Education- Office of Civil Rights(OCR). Please note OCR investigation provided only a bias picture due to inaccuracies provided by DARS.

DARS failed to provide intervention for accessing reasonable accommodations for any training or testing in fitness or personal training courses.

3.
1)TW would like a remedy with reimbursement for participation in the National Personal Training Institute.
2) TW would also like to be reimbursed for the written transcription of the audio tapes provided by DARS that had to be privately paid for because TW was told that he was not eligible to receive a written transcript based on the type of disability he had. Even though TW presented medical evidence for a written transcript, TW was summarily declined.
3) TW would like compensatory damages due the ongoing depression that he has had in relationship to trying to resolve the issues in his case.

SIGNATURE /s/ Tanyon Watson
Tanyon Watson
9515 Shepherd Hills Drive
Lorton, Virginia 22079
571 338 3506