IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TANYON WATSON,<br><br>         *Plaintiff,*<br><br>    v.<br><br>VIRGINIA DEPARTMENT FOR AGING &<br>VOCATIONAL REHABILITATION SERVICES, ET<br>AL., | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. 1:16-cv-1002 |

### Memorandum Opinion

This matter comes before the Court on Defendants Virginia Department for Aging and Rehabilitative Services ("DARS"), Teresa Bertsch, Carrie Gilbert, Douglas James and Davian Morrell ("Individual Defendants") (collectively "Commonwealth Defendants") Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim, Dkt. Nos. 9, 10; as well as Defendant Julie Triplett's Motion to Dismiss for failure to state a claim. Dkt. No. 7. Plaintiff, Tanyon Watson, represents himself pro se in this matter. For the reasons stated below, Defendants' Motion to Dismiss for lack of subject matter jurisdiction is GRANTED, Defendants' Motions to Dismiss for Failure to State a Claim are DENIED AS MOOT; and Plaintiff's Complaint is DISMISSED WITH PREJUDICE. Plaintiff's claims under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973 are barred by the one-year statute of limitations for such actions.

## I. Background

Plaintiff Tanyon Watson suffers from dyslexia and attention-deficit disorder/hyperactivity ("ADHD"). Because of these learning disabilities, Plaintiff has struggled throughout his life in traditional educational environments. Notably, Plaintiff graduated from Herndon High School in 1977 at age 22. His post-secondary education was limited to some classes at Northern Virginia Community College. While the learning disabilities make paper and pencil work difficult, Plaintiff has a record of performing at a comparatively higher level in hands-on coursework. Consequently, Plaintiff has explored the possibility of pursuing a career as a certified personal trainer.

To pursue his career goals, Plaintiff applied for vocational rehabilitation services with Virginia Department for Aging and Rehabilitative Services ("DARS" or "the Agency") in either 2007 or 2009.[1] Plaintiff advised DARS of his goal of becoming a personal trainer and the organization took a number of steps to support him. Among other forms of assistance, DARS referred Plaintiff to a specialist for a Learning Needs Assessment Report. Through the consultation, the specialist identified studying techniques which might benefit Plaintiff and also recommended tutoring sessions. In addition, a DARS counselor, Defendant Carrie Gilbert, assisted Plaintiff in identifying work goals in an Individual Plan of Employment ("IPE") which was updated on an annual basis. The IPE was revised on numerous occasions in response to Plaintiff's health issues and his desire to pursue a job prospect as a security guard. During this time, Plaintiff repeatedly participated in fitness certification programs but was unsuccessful in passing any required written tests. In March 2014, Plaintiff requested a new counselor, and Defendant Davian Morrell took responsibility for Plaintiff's case. In a meeting with Plaintiff on

---

[1] Reading all factual assertions in favor of the Plaintiff, he began receiving services in 2007. The official report from the Office of Civil Rights of the Department of Education (included as an attachment to Plaintiff's Complaint) found that services commenced in 2009. The precise date is immaterial to the issue before the Court.

June 25, 2014, Defendant Morrell advised Plaintiff that he should consider other career opportunities because of his inability to succeed in his goal of becoming a personal trainer. Specifically, Defendant Morrell advised that DARS would not pay for Plaintiff to receive training from the National Personal Training Institute because the program was a diploma and not a certification (thus a written-test based certification would still be required); Plaintiff was unable to succeed on previous attempts to pass required personal trainer coursework; and Plaintiff suffered back issues which Defendant Morrell believed would limit his ability to work in the personal training industry.

Plaintiff objected to these findings and requested a formal written notice of the DARS decision. The requested written notice was provided to him on August 4, 2014. Thereafter, Plaintiff explored further administrative remedies. Plaintiff does not specify the dates of these administrative proceedings but the dates can be gleaned from the exhibits attached to the Complaint and from Defendants' statements of facts. Plaintiff requested and obtained an administrative hearing with a hearing officer from DARS on November 18, 2014. Dkt. No. 1, Exh. 2, at 31; Exh. 3-6. An undated and unattributed "Administrative Review for Tanyon Watson vs. Dars" is attached to the Complaint and encourages reconsideration of the agency decision based in part on the audio from the November 18, 2014 hearing. *See* Dkt. No. 1, Exh. 6, at 2. The Review is a piece of advocacy but it is unclear to whom it was directed. Separately, Plaintiff requested reconsideration by DARS on February 12, 2015. Dkt. No. 1, Exh. 6, at 13. The Agency filed a rebuttal to Plaintiff's request for reconsideration on February 20, 2015. *Id.* On March 13, 2015, the Commissioner of DARS issued a final affirmation of the original agency finding. Dkt. No. 1, Exh. 6, at 16. Having obtained no relief through direct appeals to the Agency, Plaintiff contacted the Office of Civil Rights for the U.S. Department of Education

alleging that DARS had violated its duties under Section 504 when it denied the request to

participate in the NPTI program and denied a request for a copy of the transcript from the

November 18, 2014 hearing. Dkt. No. 1, Exh. 6, at 20. The Office of Civil Rights noted that

Plaintiff's complaint was sent on August, 14, 2015. *Id.* The Office issued its findings on

February 10, 2016, and found no evidence of violations by DARS. *See* Dkt. No. 1, Exh. 6, at 20,

24-25. Plaintiff also submitted as an exhibit an email from Plaintiff's account to an unidentified

"department" asking for assistance in looking into Plaintiff's complaints against DARS. Dkt.

No. 1, Exh. 6, at 18. The email is dated March 16, 2015 and the recipient is not apparent on the

face of the document. *Id.* Plaintiff filed the Complaint pro se with the Court on August 4, 2016.

Defendants have moved to dismiss for lack of subject matter jurisdiction and for failure to state a

claim. Plaintiff has replied to the motions. The matter is now ripe for adjudication.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) permits the defendant to move for dismissal of a

claim when the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The court must

dismiss the action if it determines at any time that it lacks subject matter jurisdiction. Fed. R.

Civ. P. 12(h)(3). Plaintiff bears the burden to establish that subject matter jurisdiction exists.

*See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A district court should grant a

Rule 12(b)(1) motion if the material jurisdictional facts are known and the moving party is

entitled to prevail as a matter of law. *See Richmond, Fredericksburg & Potomac R.R. Co. v.*

*United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Complaints filed by pro se plaintiffs are liberally construed. *See Haines v. Kerner*, 404

U.S. 519, 520 (1972). "However inartfully pleaded by a pro se plaintiff, allegations are

sufficient to call for an opportunity to offer supporting evidence unless it is beyond doubt that the

4

plaintiff can prove no set of facts entitling him to relief." *Thompson v. Echols*, No. 99–6304, 1999 WL 717280 (4th Cir.1999) (citing *Cruz v. Beto*, 405 U.S. 319 (1972)). Thus, if a pro se complaint contains potentially cognizable claims, the plaintiff should be allowed to particularize those claims. *Id.* (citing *Beaudett v. City of Hampton*, 775 F.2d 1274 (4th Cir.1985); *Coleman v. Peyton*, 340 F.2d 603, 604 (4th Cir.1965)).

### III. Discussion

Neither Section 504 nor Title II causes of action include a statutorily mandated statute of limitations. Where a statute does not provide a statute of limitations, the Court draws from analogous state law statutes of limitations. *See Wilson v. Garcia*, 471 U.S. 261 (1985). Claims brought under Section 504 in Virginia are subject to the one year statute of limitations imposed by the Virginia Rights of Persons with Disabilities Act. *Wolsky v. Med. Coll. of Hampton Rds.*, 1 F.3d 222 (4th Cir. 1993). The same statute of limitations applies to claims brought under Title II of the Americans with Disabilities Act. *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) ("the one-year limitations period in the Virginia Disabilities Act applies to ADA claims brought in Virginia."). For both of these causes of action, "[t]he applicable statute of limitations begins to run once a claim accrues." *Id.*

Plaintiff has brought claims pursuant to Section 504 and Title II and these claims are governed by the one year statute of limitations. Therefore, to determine if Plaintiff has filed within the statute of limitations, the Court must determine the date on which the claims accrued.

"A civil rights claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* "[A] cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995).

5

"Once imputed with that knowledge, the plaintiff is on inquiry notice, imposing on him a duty to inquire about the details of [his claim] that are reasonably discoverable. To excuse him from promptly [making inquiry] by postponing the accrual of his claim would undermine the purpose of the limitations statute." *Id.* (quotations and citations omitted). In the context of Section 504 and Title II claims, the cause of action accrues when the plaintiff discusses the conduct giving rise to the discrimination with the defendant, or at the latest, when the plaintiff receives a formal written document which outlines the facts underpinning the alleged discrimination. *See Guerrero v. Weeks*, 2013 WL 5234248, at *4 (E.D. Va. Sept. 16, 2013), *aff'd*, 555 F. App'x 264 (4th Cir. 2014).

The facts and findings in *Guerrero* are instructive for this case. In *Guerrero*, the plaintiff filed a civil rights action against the truancy officer for a local public school alleging that the defendant fabricated a truancy summons for plaintiff's nephew, upon the service of which, an altercation ensued between the plaintiff and police. *Id.* at *1. The plaintiff met with the defendant and school officials to discuss the allegedly illegal truancy summons in 2007. *Id.* at *4. The court found that the statute of limitations for Section 504 and Title II claims ought to have run from that date. *Id.* Nevertheless, the court found that at the statute of limitations began to run at the latest in 2009 when the plaintiff received a copy of the alleged illegal truancy summons. *Id.* On either date, "[p]laintiff was aware of her alleged injury and the parties involved". *Id.* Therefore, the causes of action did not satisfy the one year statute of limitations applied in Virginia. *Id.*

The claim accrual in this case mirrors *Guerrero*. Plaintiff received a letter from Defendant Morrell on August 4, 2014, denying his request for support for training to the NPTI. The letter from Defendant, like the letter in *Guerrero*, advised the recipient of an administrative

6

decision. *See id.* at *1; *see also* Dkt. No. 1, Exh. 22 at 22-23 ("you have requested a letter explaining the rationale for not providing support for training…there is substantial evidence that this goal is no longer one DARS can support."). The decision affected the rights of the Plaintiff, in much the same way that the letter in *Guerrero* affected the rights of the nephew represented by his aunt in the litigation. *See Guerrero*, 2013 WL 5234248, at *1. And while unstated in the *Guerrero* decision, the court assumed for the sake of reviewing the statute of limitations, that the discrimination of the truancy letter was based on a disability. *See id.* at *4. In this respect, the case at bar more clearly illustrates the date the case accrued because the letter indisputably advised Plaintiff that he was denied the rights because of his disability—in this case his inability to pass required personal trainer testing with academic support and testing accommodations. *See* Dkt. No. 1, Exh. 2 at 22-23 ("Despite your best efforts, even with tutoring, you still were not successful in passing the certification exam. Specifically regarding 'other suitable options' it's increasingly clear there are no other options if your goal continues to be a Personal Trainer."). At this point, Plaintiff was aware of each of the facts necessary to plead a claim under Section 504 or Title II: (1) knowledge of his disability; (2) a denial of the use of public services, in this case the support of the DARS in pursuing the NPTI training; and (3) that the denial was based on his disability.

Plaintiff concedes the notice date in the Complaint, observing that "The Virginia Department of Aging & Vocational Rehabilitation Services (DARS) violated TW 504 rights when his assigned counselor Davian Morrell, verbally denied TW funded services on June 25, 2014,…TW did not receive the written denial from DM until August 4, 2014." Dkt. No. 1, at 1. Here too, the facts mirror *Guerrero*. Plaintiff was likely on notice of all facts necessary to plead a claim after the verbal denial on June 25, 2014. *See* Dkt. No 1, at 1. But even if the verbal

notice was insufficient, the letter sent on August 4, 2014 provided sufficient information for

Plaintiff to bring his claim for a violation of Section 504 and Title II.

Plaintiff has not responded to Defendants' argument that he is barred by the statute of

limitations but he may be inclined to argue that the statute of limitations should have been tolled

during the time that Plaintiff pursued administrative remedies before filing the Complaint.  But

whatever administrative remedies Plaintiff sought, "non-federal employees need not exhaust

administrative remedies before bringing a private action under Section 504 of the Rehabilitation

Act...[and] Title II of the ADA likewise does not require exhaustion prior to bringing suit."

*Lucas v. Henrico Cty. Sch. Bd.*, 822 F. Supp. 2d 589, 603-604 (E.D. Va. 2011); *see also*

*Thompson v. Virginia Dep't of Game & Inland Fisheries*, 2006 WL 1310363, at *4 (W.D. Va.

May 14, 2006), *aff'd*, 196 F. App'x 164 (4th Cir. 2006) ("claims involving public services arising

under Title II of the ADA and § 504 of the Rehabilitation Act do not require that plaintiffs

exhaust their administrative remedies prior to filing suit."); *Grubbs v. Med. Facilities of Am.,*

*Inc.*, No. 94-0009-D, 1994 WL 791708, *1 (W.D. Va. Sept. 23, 1994) (holding there is no

exhaustion requirement under Title III of the ADA or the Rehabilitation Act).

Because there is no exhaustion requirement for Section 504 or Title II claims, Plaintiff

was free to file a complaint with the Court at any time.  The tradeoff for this right to file

notwithstanding the administrative process is that the statute of limitations ran from the date that

Plaintiff was aware of the alleged violation of his rights.  Whether the date on which the statute

of limitations runs is the verbal discussion with Morrell on June 25, 2014; the written DARS

decision on August 4, 2014; the formal hearing on November 18, 2014; or the final decision of

the DARS Commissioner on March 13, 2015; Plaintiff still failed to meet the one year statute of

limitations when he filed the Complaint on August 4, 2016.  As a result, the Court lacks

jurisdiction over the Complaint and it must be dismissed with prejudice.

## IV. Conclusion

For the foregoing reasons, the Court finds that Defendants' Motion to Dismiss for Lack

of Jurisdiction, Dkt. No. 9, is GRANTED.  Defendants' Motions to Dismiss for Failure to State a

Claim, Dkt. Nos. 7, 10, are DENIED AS MOOT.  Plaintiff's Complaint, Dkt. No. 1, is

DISMISSED WITH PREJUDICE.  An appropriate order shall follow.

January 5, 2017
Alexandria, VA

                                        /s/
                                   _____
                                   Liam O'Grady
                                   United States District Judge

9